**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JUAN LUCAS PEREIRA DA SILVA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, et al.,<br><br>Respondents. | Civil Action No. 1:26-cv-12457-GAO |

**PETITIONER'S REPLY IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**
Leave to File Ordered August 6, 2026 (Electronic Order)

## INTRODUCTION

This reply concerns a single claim that neither *Pereira Da Silva I* nor any other proceeding involving Petitioner has adjudicated. *Pereira Da Silva v. Moniz*, No. 1:26-cv-10446-GAO (D. Mass. May 4, 2026) (*Pereira Da Silva I*), asked which statute authorizes Petitioner's detention, and this Court answered that 8 U.S.C. § 1225(b)(1) does. The present Petition accepts that answer *arguendo* and presents the question the prior case never reached, whether civil confinement under that authority, now in its ninth month with at least a year more in prospect and no custody hearing of any kind behind or ahead of it, has become unreasonably prolonged in violation of the Fifth Amendment. Pet. ¶¶ 4, 50–55. The question is a familiar one in this District, where at least three sessions of this Court have addressed it for noncitizens in Petitioner's circumstances and each has held that continued detention without individualized process violates due process.

Respondents' Opposition, however, is directed in substantial part to the first case. Sections 1 and 2 re-argue the statutory-classification question this Court already decided in Respondents' favor and which the present Petition expressly declines to relitigate, while Section 2's due process discussion reproduces the closing paragraph of Section 1 verbatim. Respondents cite no decision of the First Circuit, omitting *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021), which supplies the controlling standard, as well as *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), which supplies the framework, and they never address how long Petitioner has been detained, how much longer he will be detained, the conditions of his confinement, whether any delay is attributable to him, or the absence of any forum in which the necessity of his confinement can be tested.[1]

Respondents' initial response in this case properly identified the law that governs it. On June 18, 2026, Respondents advised that "the legal issues presented in this Petition concerning detention under 8 U.S.C. § 1225(b)(1) are similar to those recently addressed by several other sessions of this Court," citing *Roldan v. Moniz*, *Rincon v. Hyde*, and *Gomes Cardoso v. Hyde*, represented that "[s]hould the Court follow the reasoning of other sessions of this Court, it would reach the same result here," and submitted that "the Court may resolve this Petition without further briefing or oral argument." ECF No. 9 at 1. Each of those three decisions granted a writ of habeas corpus on constitutional due process grounds to a noncitizen in Petitioner's precise

---

[1]Petitioner respectfully notes several factual inaccuracies in the Opposition bearing on the weight of its assertions. It states that ICE detained Petitioner "[o]n or about November 28, 2026," Opp. 2, a date months in the future. It twice cites *Jennings* as "538 U.S. at 297," Opp. 6–7, although volume 538 of the United States Reports predates *Jennings* by fifteen years. It misstates the expiration date recorded on its own Exhibit 3, *see infra* Part VII, and it represents that no appeal has been filed on the basis of what "ICE agency counsel" reported rather than the Board's docket, Opp. 2, although both EOIR's electronic service confirmation and the Board's own Filing Receipt record the appeal as filed on August 4, 2026. Binnall Decl., Exs. A (EOIR service confirmation) and B (BIA Filing Receipt).

posture, a credible-fear parolee under § 1182(d)(5) re-detained after a period at liberty. *See infra* Part II. The Opposition departs from that position without acknowledging it, citing neither *Roldan* nor *Cardoso* and relying on *Rincon* only for its statutory holding.

The Opposition itself closes on the same premise, acknowledging that "if detention is prolonged, the Petitioner can file a Petition at the appropriate time." Opp. 7 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). That is the precise petition now before the Court, and the concession cannot be reconciled with Respondents' assertion two paragraphs earlier that "nothing in the statutory text imposes any limit on the length of detention." *Id.* Either the duration of civil confinement can render it unlawful, in which case *Reid* governs and Respondents have briefed nothing, or it cannot, in which case both the June response and the Opposition's own closing sentence would be without meaning. On the account Respondents themselves gave in June, the appropriate time for the present claim has arrived.

The record has also moved since the Petition was filed. The Immigration Judge ordered Petitioner removed on July 6, 2026, Opp. Ex. 4, Petitioner filed a timely Notice of Appeal with the Board of Immigration Appeals on August 4, 2026, and the Board has issued a Filing Receipt acknowledging receipt of the appeal and fee waiver request on that date. Declaration of Jacob S. Binnall ("Binnall Decl."), Ex. B (Board of Immigration Appeals Filing Receipt); *see also id*., Ex. A (EOIR electronic filing and service confirmation); id. ¶¶ 2–7. The timely appeal stays execution of the order, 8 C.F.R. § 1003.6(a), so the removal order does not shorten Petitioner's detention and instead extends it through a Board process the Department of Justice acknowledges "often" takes "more than a year." *Reducing the Size of the Board of Immigration Appeals*, 90 Fed. Reg. 15732, 15732 (Apr. 14, 2025). The state charge that occasioned Petitioner's detention has been dismissed, his derivative U visa petition has been receipted by

USCIS, he has been scheduled for a biometrics appointment in connection with the U visa petition, and ICE has nonetheless declined to release him. Binnall Decl. ¶ 8. On that record, the writ should issue and Petitioner should be released on appropriate conditions.

## I. THE CLAIM PRESENTED HERE WAS NEITHER RAISED NOR DECIDED IN *PEREIRA DA SILVA I*.

*Pereira Da Silva I* was a statutory-classification case from beginning to end. The petition there argued that Petitioner's detention was governed by 8 U.S.C. § 1226(a) and that the Laken Riley Act's enumerated predicates did not reach his state charge, the government responded that § 1225(b)(1) controlled, and this Court agreed with the government on that single question of statutory construction. The Court's May 4, 2026 Order decided which statute supplies detention authority, and it decided nothing else.

This petition accepts *arguendo* the holding that § 1225(b)(1) supplies the statutory authority for Petitioner's detention, Pet. ¶ 4, and pleads a single count that was neither raised in nor decided by the prior case, that the duration of Petitioner's confinement without individualized process violates the Due Process Clause. Pet. ¶¶ 50–55. The claim is also built on facts that did not exist on May 4, 2026, for the removal order issued on July 6, the Board appeal was properly received by the BIA on August 4, the state charge was dismissed on July 21, and the detention that stood at roughly five months at the time of the prior judgment now exceeds eight.

Respondents' footnote observes that this Court "has also decided this issue for the same Petitioner" and that "Petitioner files this Petition claiming issue preclusion does not apply." Opp. 1 n.1. Respondents advance no preclusion argument beyond that footnote, but it would fail on its

own terms in any event, as issue preclusion requires that the issue have been actually decided, claim preclusion does not reach claims premised on facts arising after the prior judgment, *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–28 (1955), and 28 U.S.C. § 2244(a) bars only grounds "determined" in the prior proceeding. The reasonableness of an eight-month detention was not and could not have been determined in a case dismissed at month five on a pure question of statutory construction, before any merits hearing, any removal order, or any Board appeal existed. Pet. ¶¶ 18–22.

## II. THE AUTHORITY RESPONDENTS ASKED THE COURT TO FOLLOW GRANTS THE RELIEF PETITIONER SEEKS.

All three sessions of this Court that Respondents identified in June ruled for the petitioner before them. In *Roldan v. Moniz*, No. 1:26-cv-10017-IT, 2026 U.S. Dist. LEXIS 10866 (D. Mass. Jan. 21, 2026), Judge Talwani held that a credible-fear parolee re-detained after eighteen months at liberty had "a reasonable expectation that he would be entitled to retain his liberty and remain out of immigration custody," *id.* at *4, found the *Mathews* factors to favor relief, and ordered a bond hearing within a week, directing that if the Immigration Judge declined to conduct it, Respondents were to advise the court "so that this court may conduct the bond hearing." *Id.* at *7. In *Cardoso v. Hyde*, No. 25-cv-13935-AK, 2026 U.S. Dist. LEXIS 33863 (D. Mass. Feb. 19, 2026), Judge Kelley granted the writ of a credible-fear parolee re-detained without notice after more than a year at liberty, held that *Thuraissigiam* "stands for the limited principle that those 'at the threshold of initial entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country,'" *id.* at *3–4, and

concluded that "[a]s Petitioner's detention is unconstitutional, the Court need not address the parties' statutory arguments." *Id.* at *7.

The Opposition's treatment of *Rincon v. Hyde* illustrates the distance between its briefing and the claim pleaded here. At page 4, Respondents rely on *Velasquez Rincon v. Hyde*, No. 25-cv-12633-BEM, ECF No. 17 at 6–8 (D. Mass. Nov. 7, 2025), for the statutory proposition that a noncitizen whose parole ends returns to § 1225(b) custody. That decision is published at *Rincon v. Hyde*, 810 F. Supp. 3d 101 (D. Mass. 2025) (Murphy, J.). That description is accurate so far as it reaches. However, at pages 9 through 16 of the same decision, on facts materially identical to the present Petitioner's, the court proceeded to hold that detention without a bond hearing violated the Due Process Clause, and it granted the writ.

The parallel runs fact for fact.[2] The *Rincon* petitioner entered the United States without inspection near Eagle Pass, Texas, received a Notice and Order of Expedited Removal under § 1225(b)(1), established a credible fear, was placed in § 1229a proceedings by a Notice to Appear, was released on parole under § 1182(d)(5)(A), lived at liberty in this country, and was detained by ICE following a state-court appearance on charges of which he was never convicted, after which an Immigration Judge refused to redetermine his custody for want of jurisdiction. 810 F. Supp. 3d at 107–08. Petitioner's history matches at every step, from Eagle Pass through the expedited removal order, the credible fear finding, the NTA, the parole, the fourteen months at liberty in Framingham, the arrest following a state-court arraignment, and the jurisdictional bar of 8 C.F.R. § 1003.19(h)(2)(i)(B). Pet. ¶¶ 34–44, Opp. Exs. 1–3.

[2]Petitioner notes for the Court that *Rincon* is on appeal (appeal filed Feb. 11, 2026), as are *Orellana v. Moniz*, 813 F. Supp. 3d 185 (D. Mass. 2025) (Saris, J.) (argued May 4, 2026, decision pending), and *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), and no decision has issued in either First Circuit appeal.

Judge Murphy agreed with the government that § 1225(b)(1) continues to supply the statutory authority after parole ends, which is the passage Respondents cite, and then reached the question presented here and held for the petitioner.

> [T]he Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the detention of a person living freely, for years, within the United States—and its expansion here cannot be justified. "The proper use of legal fiction is to prevent injustice." . . . Pretending that Petitioner never entered the United States not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every "person" within the United States.

*Id.* at 106. Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), through *Hernandez-Lara*, 10 F.4th at 27–28, the court found the liberty interest "substantial, arguably the most important one there is," *Rincon*, 810 F. Supp. 3d at 115, found the risk of erroneous deprivation "high" because "the only mechanism Petitioner has to test the propriety of his detention is DHS's discretionary authority to grant parole," which "is no real test at all," *id.* at 116, and found the government's administrative interest "substantially outweighed." *Id.* The *Rincon* petitioner obtained relief after fewer than three months in custody, while Petitioner has been confined for more than eight.

## III. RESPONDENTS' CHANGE OF POSITION IS UNEXPLAINED AND MERITS NO WEIGHT.

The doctrine of judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)). Its office is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *New Hampshire v.*

*Maine*, 532 U.S. 742, 749–50 (2001) (quotations omitted), and this Circuit invokes it where a litigant is “playing fast and loose with the courts.” *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (quotation omitted).

Petitioner recognizes that the formal doctrine ordinarily requires that a court have accepted the earlier position, *Alternative System Concepts*, 374 F.3d at 33, and this Court had not yet acted on the June response when Respondents abandoned it. The concerns the doctrine protects are nonetheless squarely presented. In June, the United States identified the decisions of this District that govern Petitioner’s circumstances, represented that following their reasoning “would reach the same result here,” and invited the Court to resolve the Petition without further briefing. ECF No. 9 at 1. In August, with Petitioner’s confinement two months longer, the United States urged the opposite outcome, cited none of the same decisions apart from the inapplicable statutory portion of *Rincon*, and offered neither acknowledgment of nor explanation for the change. *New Hampshire v. Maine* warns courts to guard against positions changed “according to the exigencies of the moment,” 532 U.S. at 750, and the considered position the government stated in June remains the most reliable expression of its view of this District’s law. *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935) (the government’s interest “is not that it shall win a case, but that justice shall be done”).

## IV. *JENNINGS* RESERVED THE CONSTITUTIONAL QUESTION THAT *REID* ANSWERS.

Respondents rest Section 3 on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), quoting its observation that “nothing in the statutory text imposes any limit on the length of detention.” Opp.

6–7. That observation speaks to statutory text alone, for *Jennings* was a case of statutory construction, and the Court said in terms that it was not reaching the constitutional question.

> Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as "a court of review, not of first view," we do not reach those arguments. Instead, we remand the case to the Court of Appeals to consider them in the first instance.

*Jennings*, 583 U.S. at 312. This Court has read that passage the same way. *See Rincon*, 810 F. Supp. 3d at 110 ("The *Jennings* majority, however, declined to address the detention scheme's constitutionality." (citing 583 U.S. at 312)). Respondents cite *Jennings* as though it resolved the very question it expressly declined to resolve.

In *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021), the First Circuit addressed what *Jennings* had left open. The court declined to adopt a categorical six-month rule, but it "adhere[d] to the notion that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention,'" *id.* at 7, observed that the Supreme Court's cases "would seem to leave open the possibility that in most individual cases, detentions of six months (or of even less time) might necessitate some type of hearing to see if continued detention is reasonably necessary to serve the statute's purposes," *id.* at 8, recorded the government's concession "that mandatory detention . . . without a bond hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to its purpose," *id.*, and expressly preserved individual claims, stating that "Nothing in this opinion precludes any class member from pursuing a claim that he or she is entitled to a bond hearing or to release based on his or her individual circumstances." *Id.* at 12.[3] The matter before this Court presently is precisely such a claim, yet

[3] *Reid* arose under 8 U.S.C. § 1226(c), but the reasonableness limitation it describes attaches to prolonged civil confinement without individualized process, and Respondents offer no reason

Respondents do not cite *Reid*, do not distinguish it, and do not acknowledge the concession it records. Nor do they address the sister circuits that apply the same duration-sensitive inquiry. *See German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020); *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024).

## V. THE ENTRY-FICTION CASES DO NOT REACH A PAROLEE RELEASED INTO THE INTERIOR.

Respondents' constitutional argument rests on a single proposition, that under *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner is treated "as if stopped at the border" and therefore has no cognizable liberty interest. Opp. 5–6, 7. The sentence Respondents quote appears in *Thuraissigiam*, 591 U.S. at 139, and three features of that decision confine it to circumstances far from Petitioner's.

First, the Court decided the case of an alien "apprehended just 25 yards from the border," *id.* at 107, and grounded its holding in the rule that an alien "detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Id.* at 140. Second, the respondent there "did not ask to be released," *id.* at 117, for he sought further review of his asylum claim, and the Court accordingly framed the rights at issue as rights "regarding admission." *Id.* at 140. Third, the sentence Respondents quote describes "aliens who arrive at ports of entry." *Id.* at 139. Petitioner arrived at no port of entry, was released into this District on the government's own credible-fear

---

why the Fifth Amendment should tolerate under § 1225(b) what it forbids under § 1226(c). This Court has already answered that question in the negative on facts materially identical to Petitioner's. *See Rincon*, 810 F. Supp. 3d at 110–13. The Fifth Circuit has since held that due process requires an individualized bond hearing within ninety days of detention. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. July 2, 2026). Petitioner is in his ninth month.

determination, lived in Framingham for fourteen months, and asks the Court for liberty pending his Board appeal, a form of relief that raises no question of admission.

*Mezei* reaches no further, for the alien there was excluded at Ellis Island without ever entering the country, and its holding is that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien *denied entry* is concerned." 345 U.S. at 212 (emphasis added). For persons within the country, *Zadvydas* supplies the governing rule, that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States." 533 U.S. at 693.

The sessions of this Court that Respondents cited in June applied these limits to detainees in Petitioner's position. *Rincon* rejected the same argument on materially identical facts, observing that "[r]ealistically, the '25 yards' at issue in *Thuraissigiam* was the functional equivalent of a cartographic rounding error" and that the petitioner "was not 25 yards over the border; nor was he maintained in an immigration processing center." 810 F. Supp. 3d at 111–12. *Cardoso* held that a credible-fear parolee "is not seeking 'initial entry' into the United States" and therefore "has full due process rights." 2026 U.S. Dist. LEXIS 33863, at *4.

Respondents' remaining authority, *Leng May Ma v. Barber*, 357 U.S. 185 (1958), describes parole as "simply a device through which needless confinement is avoided while administrative proceedings are conducted" and observes that "[p]hysical detention of aliens is now the exception, not the rule." *Id.* at 190. A doctrine the Supreme Court described as a device for avoiding needless confinement cannot supply the justification for confinement without limit.

## VI. ON THE PRESENT RECORD, PETITIONER'S CONFINEMENT IS UNREASONABLY PROLONGED.

The reasonableness of prolonged civil immigration detention is assessed by considerations that include the length of detention to date, its likely future duration, the reasons for any delay, the conditions of confinement, and the strength of the government's interest in continued custody. See *Reid*, 17 F.4th at 7–8; *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020); *Hernandez-Lara*, 10 F.4th at 27–28 (applying the *Mathews* factors). Respondents did not brief that inquiry, and the facts bearing on it are undisputed.

Petitioner has been confined at the Plymouth County Correctional Facility continuously since November 28, 2025, a period now exceeding eight months.

The Immigration Judge ordered Petitioner removed on July 6, 2026. Opp. Ex. 4. Petitioner filed a timely Notice of Appeal on August 4, 2026, which the Board has acknowledged and which stays execution of the order. Ex. B to the Binnall Declaration (BIA Filing Receipt); 8 C.F.R. § 1003.6(a). The Board had 202,803 appeals pending at the close of FY 2025 against 35,362 completed, and the Department of Justice acknowledges that such appeals "often" take "more than a year." 90 Fed. Reg. at 15732. If Petitioner prevails before the Board, proceedings continue on remand, and if he does not, a petition for review follows, so that total confinement will approach or exceed two years.

Under the classification Respondents defend, an Immigration Judge lacks jurisdiction to redetermine Petitioner's custody. 8 C.F.R. § 1003.19(h)(2)(i)(B). Petitioner has never received a custody hearing before any neutral adjudicator and the only mechanism available to him is

Respondents' own discretion to grant parole, which "is no real test at all," *Rincon*, 810 F. Supp. 3d at 116, leaving this Court as the only available forum.

None of the delay is attributable to Petitioner, who appeared at every hearing during fourteen months at liberty, appeared at his individual hearing, and has sought no unnecessary continuance, and Respondents do not contend otherwise.

Petitioner is held at a county correctional facility that also houses pretrial criminal detainees, under carceral conditions.

The government's interest in continued custody has only weakened since the arrest. The state charge that occasioned Petitioner's detention, one count under M.G.L. c. 265 § 13M, was dismissed in Framingham District Court on July 21, 2026, and Petitioner now has no criminal convictions and no pending charges. Respondents' June response identified that arrest as the reason ICE detained him, ECF No. 9 at 1 n.1, so the sole justification the government has offered for this detention no longer exists. *Rincon* treated the absence of any conviction as dispositive in distinguishing *Demore v. Kim*, 538 U.S. 510 (2003), because "Petitioner has not been convicted of any crime" and "Respondents offer no 'justifiabl[e] concern[]' that Congress might have sought to address by providing for his unbailable detention." 810 F. Supp. 3d at 114.

Petitioner, meanwhile, holds a receipted Form I-918A derivative U visa petition, Receipt No. IOE0937564044, received by USCIS on July 2, 2026, and now advanced to biometrics scheduling. Detained noncitizens with pending U visa petitions are protected by a nationwide preliminary injunction. *Immigrant Center for Women & Children v. Noem*, No. 2:25-cv-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026). Counsel for Respondents has represented that ICE has declined to release Petitioner notwithstanding both the petition and the injunction.

Binnall Decl. ¶ 8. Under the *Mathews* framework or the *Reid* inquiry, these facts state a violation of the Due Process Clause.

## VII. THE REGULATION AND EXHIBITS ON WHICH RESPONDENTS RELY UNDERCUT THEIR POSITION.

The regulation Respondents invoke resolves the remedial question against them. Respondents rely on § 212.5(e)(1)(ii), Opp. 3, which directs that an alien whose parole expires "shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required." Paragraph (e)(2)(i) provides that the alien "shall be restored to the status that he or she had at the time of parole," and it closes with a command the Opposition does not mention. "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien *shall again be released on parole* unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." Petitioner's removal order cannot be executed while his Board appeal is pending, 8 C.F.R. § 1003.6(a), Respondents have made no public-interest determination of record, and ICE has declined release with the U visa receipt and the *Immigrant Center for Women & Children* injunction in hand. Binnall Decl. ¶ 8. On the regulation Respondents themselves invoke, release is the default, and the officials vested with that authority have declined to exercise it.

Respondents' exhibits point the same way. The Opposition asserts that "at the time of his parole, Petitioner's custody status was an § 1225(b)(1) that of an arriving alien." Opp. 4. The Notice to Appear that Respondents filed as Exhibit 1 charges Petitioner in removal proceedings under § 240, certifies him as "an alien present in the United States who has not been admitted or paroled," leaves the box for "arriving alien" unmarked, and records that the "Section 235(b)(1)

order was vacated pursuant to: [x] 8 CFR 208.30." Whatever its statutory significance after this Court's May 4 Order, the charging document the government itself issued places Petitioner at a considerable distance from the border cases on which the Opposition's due process argument depends.

Exhibit 3 undermines the Opposition's chronology as well. The Opposition asserts that "Petitioner's parole expired on or about November 1, 2025," Opp. 3, while the parole notice Respondents filed is dated October 1, 2024, and recites that it "is valid for one year beginning from the date on this notice," so that parole expired on October 1, 2025. Respondents did not detain Petitioner until November 28, 2025, nearly two months after the expiration they now describe as compelling his immediate return to custody.

## VIII. THE APPROPRIATE REMEDY IS IMMEDIATE RELEASE.

A habeas court "shall . . . dispose of the matter as law and justice require," 28 U.S.C. § 2243, and "the habeas court must have the power to order the conditional release of an individual unlawfully detained." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Where prolonged immigration detention has crossed the constitutional line, courts have ordered release directly. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1084 (9th Cir. 2006) (ordering "immediate release, subject to terms and conditions"). As articulated below, release is the appropriate remedy here.

First, according to Respondents' own position, there is no lawful forum to which a bond hearing could be remanded. On the classification Respondents continue to defend, an Immigration Judge lacks jurisdiction over Petitioner's custody, 8 C.F.R. § 1003.19(h)(2)(i)(B), and the Immigration Judge in *Rincon* refused custody review on precisely that ground. 810 F. Supp. 3d at 108. What remains is the detaining agency's own parole discretion, and that

discretion has already been exercised against Petitioner notwithstanding the dismissed charge, the receipted U visa petition, and the *Immigrant Center* injunction, Binnall Decl. ¶ 8, even though § 212.5(e)(2)(i) makes release the default. *See supra* Part VII. An order returning the remedy to the agency whose refusals produced this Petition would leave the violation without redress.

Second, the reality in this District and elsewhere shows that ordered custody hearings have repeatedly failed as adequate remedies. Judge Sorokin, ordering immediate release on a motion to enforce, described the case before him as "the fifth case this Court has encountered in which" the Immigration Court "denied a person bond after a proceeding that was patently constitutionally deficient," each of them resting on "only perfunctory reasons for denying bond." He added that "the undersigned is not the only District Judge to have found such defects," citing orders of three other sessions of this Court. *Atariguana-Buele v. Warden, Plymouth Corr. Facility*, No. 26-12168-LTS, 2026 U.S. Dist. LEXIS 141138, at *8 (D. Mass. June 25, 2026). Judge Kelley ordered immediate release, holding that she "cannot credit the [Immigration Judge's] statement that the finding of flight risk was based on 'full consideration of the evidence presented.'" *Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 U.S. Dist. LEXIS 113837, at *19 (D. Mass. May 22, 2026). Judge Murphy ordered release rather than a further hearing where a bond denial rested on "a police report describing a delayed allegation of misdemeanor assault, where the officers observed no physical injuries and where charges were ultimately dropped." *Miti v. Moniz*, 827 F. Supp. 3d 206, 2026 U.S. Dist. LEXIS 69500, at *2 (D. Mass. Mar. 31, 2026), *appeal filed* (1st Cir. June 8, 2026). Excusing resort to the agency, Judge Murphy found that "the prospect of an unaffected decisionmaker seems unrealistically thin" and that little was to be gained "from making Petitioner go through the vain

exercise of getting denied once again." *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). Judge Sorokin ultimately ordered release outright upon concluding that "ordering a bond hearing is not an adequate remedy." Order, *Rosario v. Hyde*, No. 1:26-cv-12954 (D. Mass. July 2, 2026).

Third, the sessions of this Court that have continued to order hearings have written protections into their orders, and those protections have not held. Judge Gorton ordered release unless the government provided a hearing compliant with *Hernandez-Lara* within seven days. *Vigil Rodriguez v. Wesling*, No. 26-10269-NMG, ECF No. 8 (D. Mass. Feb. 6, 2026). Judge Sorokin directed that the respondents "release Petitioner by 6 PM on May 26, 2026, unless he is provided a bond hearing . . . before that time," that the burdens of proof be those "resolved by the First Circuit in *Hernandez-Lara*," and that the Immigration Judge "consider whether any condition, combination of conditions, or less-restrictive alternative to detention would ameliorate such risk." He ordered release the same day he found that the hearing had not complied. *Atariguana-Buele*, 2026 U.S. Dist. LEXIS 141138, at *2, *7. Judge Talwani, in one of the decisions Respondents commended to this Court, directed that the district court would conduct the hearing itself if the Immigration Judge declined. *Roldan*, 2026 U.S. Dist. LEXIS 10866, at *7. In the *Guerrero Orellana* class litigation, the court found it necessary to order the government to notify class members of their right to return to federal court when an Immigration Judge denies the hearings the judgment guaranteed. Electronic Order, *Orellana v. Moniz*, No. 1:25-cv-12664-PBS (D. Mass. Jan. 29, 2026). Courts elsewhere have dispensed with the hearing remedy altogether, ordering immediate release because "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore," *Singh v. Valdez*, No. 26-cv-1109-WJM, 2026 U.S.

Dist. LEXIS 71846, 2026 WL 890240 (D. Colo. Apr. 1, 2026), because "the typical remedy for such detention is, of course, release," *Urdaneta Medina v. ICE*, No. A-26-CA-01329-XR (W.D. Tex. June 1, 2026), and, within this circuit, by directing immediate release on the conditions of a prior bond order. *Segura Fernandez v. Nessinger*, No. 26-cv-491-JJM-PAS (D.R.I. July 29, 2026) (McConnell, C.J.).

Fourth, the release Petitioner seeks is an arrangement the government itself designed and tested. ICE paroled him in October 2024 with reporting conditions upon determinations that necessarily found he posed neither a security risk nor a risk of absconding, *see Cardoso*, 2026 U.S. Dist. LEXIS 33863, at *6 (quoting 8 C.F.R. § 212.5(b)), and he lived under that supervision in Framingham with his wife for fourteen months, during which he appeared at every hearing before the Immigration Court and ICE neither revoked his parole nor commenced any enforcement action for noncompliance. The event that prompted re-detention was a state arraignment on a charge since dismissed, ECF No. 9 at 1 n.1, and Respondents have identified no other justification. An order releasing Petitioner on the reporting conditions of his prior parole restores that arrangement, the Court's standing order requiring 48 hours' notice before any transfer out of this District, Dkt. 4 ¶ 3, remains in force, and Petitioner's Board appeal proceeds exactly as it would for any noncitizen on the nondetained docket.

## CONCLUSION

For fourteen months the government supervised Petitioner at liberty under conditions of its own design, and for the last eight it has confined him without the custody hearing due process requires, in any forum. Respondents' initial response identified three decisions of this District as controlling, each of which granted the writ to a detainee in Petitioner's position, and the

Opposition neither distinguishes those decisions nor addresses the duration of the confinement it defends. The state charge that prompted the arrest has been dismissed, the U visa petition is receipted and advancing through biometrics, the Board appeal is docketed and stays removal, and the officials holding the release authority conferred by § 212.5(e) have expressly declined to exercise it.

Petitioner therefore respectfully requests that the Court grant the Petition and enter an order that:

(1) directs Respondents to release Petitioner immediately with any additional conditions of supervision the Court deems appropriate;

(2) in the alternative, directs that Petitioner be released unless Respondents provide, within seven days, an individualized custody hearing before a neutral adjudicator at which Respondents bear the burden of justifying continued detention by clear and convincing evidence under *Hernandez-Lara* and *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021), with this Court to conduct the hearing should the Immigration Judge decline jurisdiction, as *Roldan* provided, and

(3) retains jurisdiction to enforce compliance with its order.

Respectfully submitted,

JUAN LUCAS PEREIRA DA SILVA,
By his attorney,

**/s/ Jacob S. Binnall**
Jacob S. Binnall (BBO No. 712846)
Law Office of Jacob Binnall PLLC
43 Park Street #17
Framingham, MA 01702
Tel: (508) 808-8378
jacob@attorneybinnall.com

Dated: August 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 11, 2026.

**/s/ Jacob S. Binnall**
Jacob S. Binnall